IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-583-F

ADOLPHO BEASLEY, JOHNATHAN )
CLARK, and CALVIN MCINTYRE, )
individually and on behalf of all persons )
similarly situated, )
　) 
　) **ORDER**
Plaintiffs, )
　)
vs. )
　)
CUSTOM COMMUNICATIONS, INC, )
　)
Defendant. )
_____)

Before the Court is the motion of Adolpho Beasley, Johnathan Clark and Calvin McIntyre (collectively "Plaintiffs") to disseminate court-facilitated notice to potential opt-in plaintiffs of a collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* [DE 37]. Defendant responded and Named Plaintiffs replied. [DEs 48, 52]. The court construes Plaintiffs' motion as a motion for conditional certification of a collective action under the FLSA and facilitation of notice.

I. **FACTUAL BACKGROUND**

Plaintiffs bring this hybrid action individually and on behalf of all others similarly situated for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq.*, and for unjust enrichment against Defendant. Plaintiffs claim Defendant unlawfully misclassified them as independent contractors as opposed to employees. Plaintiffs argue that as a result of this

misclassification, Defendant deprived them of minimum wage compensation and overtime pay to which they are entitled.

Defendant is an authorized DISH Satellite Television ("DISH") retailer. According to Daniel Sherrard, Defendant's operation manager, Defendant maintains six offices in North Carolina, three offices in South Carolina, one office in Georgia, two offices in Virginia and one office in Maryland.[1] Defendant employs six field service managers to oversee its operations at the various offices.[2] Defendant utilizes technicians to install and repair DISH products and services for Defendant's customers. Plaintiffs are current or former technicians for Defendant.[3]

Adolpho Beasley began working for Defendant in January 2014 and continues to do so. Beasley has performed work for Defendant as a technician in North Carolina, South Carolina and Virginia.[4] According to Kim Owens, Defendant's payroll administrator, Beasley also worked out of Defendant's Laurel, Maryland office for approximately ten days at an unspecified time. Owens Decl. ¶¶ 7-8. Johnathan Clark began working for Defendant as a technician in July 2014 and held this position for approximately fourteen months. During his tenure, Clark worked in North Carolina and Virginia.[5] Calvin McIntyre began working for Defendant as a technician in January 2013 and held this position for approximately two years. During his tenure, McIntyre

---

[1] Decl. Daniel Sherrard ¶¶ 2-3 [DE 48-2].

[2] *Id.* ¶ 4.

[3] Decl. Adolpho Beasley ¶ 5 [DE 38-1]; Decl. Calvin McIntyre ¶ 5 [DE 38-2]; Decl. Johnathan Clark ¶ 5 [DE 38-3].

[4] Beasley Decl. ¶ 3.

[5] Clark Decl. ¶ 3. Owens' declaration does not indicate that Clark worked at any other office other than Defendant's Fayetteville, North Carolina office. Owens Decl. ¶ 7.

worked in North Carolina and South Carolina.[6] According to Plaintiffs, they and "virtually all" technicians worked more than forty hours each week.[7]

Plaintiffs attest that each completed a job application, consented to a consumer background check and submitted to a drug test.[8] They also participated in an unpaid training period.[9] Beasley and Clark underwent training for three days, approximately twelve hours per day.[10] McIntyre's training totaled two weeks for approximately eight hours per day.[11] Plaintiffs were paid on a per job basis at a rate set by Defendant.[12] Plaintiffs attended mandatory weekly meetings and reported to Defendant "one additional day each week at 6:00 a.m." for mandatory inventory checks. Plaintiffs purchased and provided any tools required to perform their tasks

---

[6] McIntyre Decl. ¶ 3; Owens Decl. ¶¶ 7, 9.

[7] Beasley Decl. ¶ 22 (worked for Defendants 50 to 84 hours each week); Clark Decl. ¶ 23 (worked for Defendants 60 to 72 hours each week); McIntyre Decl. ¶ 25 (worked 16 hour days, 7 days a week).

According to Plaintiffs, working a second job is not feasible as they would be unable to complete all of the jobs assigned by Defendant. Beasley Decl. ¶ 6; Clark Decl. ¶ 6; McIntyre Decl. ¶ 6. In support of this statement, Plaintiffs aver that on days where technicians indicate availability but are not assigned jobs, they must remain logged onto Defendant's online database between 6:00 a.m. and 5:00 p.m. and "wait the entire time for a job." Beasley Decl. ¶ 7; Clark Decl. ¶ 6; McIntyre ¶ 6; *but see* Sherrard Decl. ¶¶ 14-15 (stating "[t]echnicians are sent text messages or emails if they are assigned jobs after the initial assignments have been made;" thus, "a technician does not have to stay logged onto or monitor the database throughout the day to determine if a job has been assigned to him"). For conditional certification purposes, the court does not consider any discrepancies between Plaintiffs' declarations and Defendant's declaration. *See Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 571 (D. Md. 2012) (explaining "credibility determinations are usually inappropriate for the question of conditional certification").

[8] Beasley Decl. ¶ 8; Clark Decl. ¶ 9; McIntyre Decl. ¶ 8.

[9] Beasley Decl. ¶ 11; Clark Decl. ¶ 12; McIntyre Decl. ¶ 12; *cf.* Sherrard Decl. ¶¶ 6, 9 (stating while Defendant "does not provide any training," new technicians typically "work with an existing ... technician to become familiar with DISH's processes and/or procedures and/or to demonstrate his ability to perform the installation and repair tasks").

[10] Beasley Decl. ¶ 11; Clark Decl. ¶ 12.

[11] McIntyre ¶ 12; *see* Sherrard Decl. ¶ 6 (stating Defendant "does not have a set period of time that new technicians are required to work with an existing technician").

[12] Beasley Decl. ¶ 12; Clark Decl. ¶ 13; McIntyre ¶ 13.

and also purchased general liability insurance.[13] *See* Super Sat Buddy Meter Agreement [DE 38-7] (providing cost for this device – including applicable taxes – is deducted from technician's pay each pay period until paid in full).[14]

Defendant pays its technicians a set price per job based on a grading system of A (highest) to F (lowest).[15] This grading system is based on various factors including completion rates, trouble call rates and customer satisfaction surveys.[16] A technician's grade determines his service call and installation rates. *See*, *e.g.*, Beasley Decl. ¶ 16; Clark Decl. ¶ 17; McIntyre Decl. ¶ 20 (providing service fee and installation rates based on their respective grades). A technician's refusal to download a phone tracking application so that Defendant could keep track of a technician's movements results in a grade D.[17] According to McIntyre, an "A" grade is achievable only if technicians drive white vehicles displaying a permanent decal bearing Defendant's logo.[18]

Technicians provide installation and repair services for Defendant pursuant to an Agreement for Independent Contractor Services ("ICA Agreement").[19] In signing the ICA Agreement, Defendant and the technicians acknowledge, *inter alia*, that: (1) technicians may not solicit Defendant's customers for any related business for one year following the termination of

---

[13] Beasley Decl. ¶ 18; Clark Decl. ¶ 19; McIntyre Decl. ¶ 20; Sherrard Decl. ¶ 10.

[14] According to Plaintiffs, they were required to report to a field service manager after each service job. Beasley Decl. ¶¶ 13-15; Clark Decl. ¶¶ 14-16; McIntyre Decl. ¶¶ 14-16. Defendant disputes this contention. *See* Sherrard Decl. ¶ 16.

[15] ICA Agreement ¶ 3; Sherrard Decl. ¶ 11.

[16] Sherrard Decl. ¶ 11.

[17] Beasley Decl. ¶ 17; Clark Decl. ¶ 18; McIntyre Decl. ¶ 19.

[18] McIntyre Decl. ¶ 18.

[19] Beasley Decl. ¶¶ 5, 9; Clark Decl. ¶¶ 5, 10; McIntyre Decl. ¶¶ 5, 9.

the ICA Agreement; (2) Defendant may terminate the ICA Agreement "at any time" for "reasons sufficient and satisfactorily [sic] to it alone;" (3) technicians are independent contractors and "shall not be deemed or construed to be an employee;" and (4) Defendant cannot "control or direct the details, manner or means" by which the technicians perform their services.[20]

The ICA Agreement requires that technicians execute a Terms of Services To Be Provided by Contractor ("Terms of Service") form.[21] Pursuant to this form, technicians must "wear a company polo shirt and company issued badge." Also, technicians must place Defendant's magnetic logo on their personal vehicles[22] when conducting business on behalf of the Defendant. If Defendant discovers to the contrary, it issues and bills technicians for two magnets. Technicians "are not required to accept or perform any specific number of appointments each day or week;" however, they bear responsibility for completing work to Defendant's specifications. Technicians provide a sixty-day warranty period for their services.[23] Defendant deducts the costs of "any inventory, security tools or equipment checked out" and subsequently lost by a technician.[24]

Technicians must also execute a Custom Communications Pay Policies ("CCPP") form, which provides a list of Defendant's "standard pay policies."[25] These policies include (1) nonpayment for a technician's work unless paperwork is turned in within ten days thereof; (2) deduction from pay for labor costs associated with any post-installation troubleshooting

---

[20] ICA Agreement ¶¶ 7, 10-11, 13 [DE 38-7].

[21] *Id.*, Ex. A.

[22] Sherrard Decl. ¶ 10 (stating technicians use their personal vehicles).

[23] *Id.*, Ex. A ¶¶ 2, 4, 7, 10.

[24] *Id.*, Ex. A ¶ 8.

[25] [DE 38-7].

performed by another technician within the sixty-day warranty period (referred to as a "charge back"); and (3) nonpayment for repeat service calls within the sixty-day warranty period and for visits where the technician is unable to diagnose or fix the problem.[26]

Since initiating this case, thirty-eight former or current technicians filed opt-in consent forms. *See* Pls.' Reply, Ex. A [DE 52-1]; *see also* [DEs 58, 62, 64]. Also, seven of these opt-in plaintiffs – Roger Gore, II, Alan D. Bosch, Benjamin Smith, David Pomponio, Kevin Bollock, Kevin Knoles and Timothy LaBean – provided declarations. [DEs 38-8, 52-2 to 52-7]. These individuals worked as technicians for Defendant in various locales. *See* Gore Decl. ¶ 3 (worked in North Carolina) [DE 38-8]; Bosh Decl. ¶ 3 (worked in South Carolina "out of the Summerville office") [DE 52-2]; Smith Decl. ¶ 3 (worked in North Carolina "out of the Greenville, North Carolina office") [DE 52-3]; Pomponio Decl. ¶ 3 (worked in North Carolina and Virginia "out of the Greenville, North Carolina office,") [DE 52-4]; Bollock Decl. ¶ 3 (worked in South Carolina "out of the Irmo, South Carolina office") [DE 52-5]; Knoles Decl. ¶ 3 (worked in North Carolina and Virginia "out of the Greensboro, North Carolina office") [DE 52-6]; LaBean Decl. ¶ 3 (worked in North Carolina and South Carolina "out of the Fayetteville, North Carolina and Myrtle Beach, South Carolina offices") [DE 52-7]. These declarants attest to working for Defendant between six months and six years, with their typical work week consisting of more than forty hours. *See* Gore Decl. ¶¶ 3, 24 (nine months and seventy-five to eighty hours); Bosh Decl. ¶¶ 3, 6 (ten months and fifty to sixty hours); Smith Decl. ¶¶ 3, 6 (nineteen months and ninety hours); Pomponio Decl. ¶¶ 3, 6 (four years and forty-eight to eighty-four hours); Bollock Decl. ¶¶ 3, 6 (six months and seventy-two to one hundred twenty-six hours); Knoles Decl. ¶¶ 3, 6 (six years and fifty-five to eighty-four hours); LaBean Decl. ¶¶ 3, 6 (one year and seventy-two

---

[26] *Id.*

to one hundred five hours). In their declarations, these opt-in plaintiffs confirm they were subject to the same policies and procedures as those identified by Plaintiffs.

## II. LEGAL STANDARD

The FLSA imposes minimum wage and overtime requirements on employers, 29 U.S.C. §§ 206(a) and 207(a), and provides a cause of action for violations of these provisions. 29 U.S.C. § 216(b).[27] If an employer violates the FLSA, employees may sue their employers as individuals or, if they choose, in a collective action on behalf of themselves and "similarly situated" employees. *See Jimenez-Orozco v. Baker Roofing Co.*, No. 5:05-CV-34-FL, 2007 U.S. Dist. LEXIS 93860, at *18 (E.D.N.C. Dec. 20, 2007) (citing 29 U.S.C. § 216(b)).

Certification of a collective action under the FLSA is governed by 29 U.S.C. § 216(b)[28] and is a two-step process. First, the court makes a pre-discovery determination as to whether the purported class is "similarly situated" and if so, conditionally certifies the class and approves dissemination of notice to putative class members of their right to opt in.[29] *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008) (explaining the importance of conditional certification early in a proceeding given "the statute of limitations continues to run on unnamed

---

[27] The FLSA allows certain exemptions to the minimum wage and overtime requirements. See 29 U.S.C. § 213 (listing exemptions).

[28] The statute provides in relevant part:

An action to recover [under the FLSA] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

[29] The FLSA provides for a two-tiered statute of limitations, depending on the standard of culpability a plaintiff can prove. 29 U.S.C. § 255(a). By default, a plaintiff must commence an FLSA action within two years of the date the cause of action accrued. If a plaintiff can prove a "willful violation" of the FLSA, however, the period to commence an FLSA cause of action is extended to three years. *Id.* Generally, in an FLSA collective action, the statute of limitations for each opt-in plaintiff commences on the date the individual opts into the suit by filing his or her own written consent. *See Lee v. Vance Exec. Prot., Inc.*, 7 F. App'x 160, 167 (4th Cir. 2001). "In other words, consents not filed with the complaint do not relate back" to the date the complaint was filed. *Id.*

class members' claims until they opt into the collective action" (citing 29 U.S.C. § 256(b))); *De Luna-Guerrero v. N.C. Growers Ass'n*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004). Second, after discovery is "virtually complete," *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 299 (W.D.N.C. 2013), the court "engages in a more stringent inquiry to determine whether the plaintiff class is in fact 'similarly situated' in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action." *Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 575 (D. Md. 2014) (brackets and citations omitted); *see Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (noting the second step "is typically precipitated by a motion for decertification by the defendant" and explaining procedure if class decertified); *accord Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705-06 (E.D.N.C. 2011).

### III.   DISCUSSION

#### A.   Conditional certification is appropriate

Plaintiffs seek conditional certification of the following class: "All individuals who were classified as independent contractors while working as Technicians in the United States for Custom Communications, Inc. from February 12, 2013 to the present." Pls.' Mem. at 10 [DE 38]. Plaintiffs offer their declarations and the declarations of seven opt-in plaintiffs as support. Plaintiffs also summarize via a chart Defendant's office locations from which and field service managers for whom thirty-three of the thirty-eight opt-in plaintiffs worked. Pls.' Reply, Ex. A. Plaintiffs argue they are similarly situated to all of Defendant's technicians.

"Putative class members are similarly situated . . . if they raise a similar legal issue as to coverage, exemption, or nonpayment o[f] minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions."

*McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 469 (E.D.N.C. 2010) (internal quotation marks omitted); *see De Jesus De Luna-Guerrero v. N.C. Grower's Ass'n*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) (stating "[d]ifferences as to time actually worked, wages actually due and hours involved are . . . not significant to [the similarly situated] determination). While the court has broad discretion in determining whether to conditionally certify a collective action, the burden of demonstrating that prospective class members are similarly situated belongs to the plaintiffs. *Houston*, 591 F. Supp. 2d at 832.

Satisfaction of this burden requires that a plaintiff make "a relatively modest factual showing that a common policy, scheme or plan that violated the law exists." *Adams v. Citicorp Credit Servs.*, 93 F. Supp. 3d 441, 453, 454 (M.D.N.C. 2015). The court's determination of whether a plaintiff made the proper showing is based on "substantial allegations" in the pleadings and any submitted affidavits or declarations. *Randolph*, 7 F. Supp. 3d at 576; *see Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991) (explaining some factual support is required prior to authorization of notice as "[t]he courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation").

Through their declarations, Plaintiffs made the necessary "modest factual showing" that they are similarly situated to other individuals who worked as technicians within Defendant's Virginia, Maryland, North Carolina, South Carolina and Georgia offices. Plaintiffs – assigned to Defendant's Fayetteville office – were uniformly classified as independent contractors pursuant to the ICA Agreement. In fact, Defendant requires that every technician sign an ICA Agreement prior to performing services for Defendant. Sherrard Decl. ¶ 4. Plaintiffs also were subject to the same policies as provided in the Terms of Service and CCPP forms. Plaintiffs described the same duties and pay structure. Plaintiffs participated in unpaid training periods and worked in

excess of forty hours per week for which they received no overtime compensation. The declarations of the seven opt-in plaintiffs confirm the same policies, procedures and protocols extended to five additional offices. Taken together, these assertions suggest that Plaintiffs and the putative class were subject to a common policy, scheme, or plan resulting in compensation that did not meet the minimum wage and overtime requirements of the FLSA.

Defendant presents two counterarguments in an effort to avoid conditional certification. First, Defendant argues Plaintiffs lack personal knowledge as to (1) the alleged overtime hours of other technicians and (2) Defendant's practices and procedures at locations outside of its Fayetteville, North Carolina office. Neither point is persuasive. Subsequent to Defendant's response, Plaintiffs supplemented the record with declarations from opt-in plaintiffs based out of five additional locations, each of whom attest to working in excess of forty hours a week. Also, Sherrard (Defendant's operations manager) attests to some of the **very policies and procedures** that Plaintiffs described. In particular, he avers that technicians (1) are bound by the ICS Agreement and the Terms of Services form; (2) receive no pay while "working with 'mentor' technicians;" and (3) are paid a set price per job based on a letter grade system. Sherrard Decl. 4, 8, 11.

Assuming *arguendo* that Plaintiffs and the putative class members are similarly situated, Defendant argues certification of a collection action is nevertheless inappropriate because the determination of whether each technician is an employee or an independent contractor demands individualized treatment. In short, Defendant invites the court to consider the "economic realities" of the working relationship – not merely characterization as an independent contractor or employee – in deciding whether to conditionally certify an FLSA action. *See Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (explaining "in determining whether a

worker is an employee covered by the FLSA, a court considers the 'economic realities' of the relationship between the worker and the putative employer"). Defendant cites no Fourth Circuit Court of Appeals or district court decision expressly applying the economic realities test at the conditional certification stage and the court has found none.[30] Rather, district courts in the Fourth Circuit have found individualized analyses at the conditional certification stage would improperly delve into the merits of Plaintiffs' claims. *See Long*, 292 F.R.D. at 303 (finding "a fact-intensive inquiry" inappropriate at the conditional certification stage); *see also De Jesus De Luna-Guerrero*, 338 F. Supp. 2d at 654 ("Differences as to time actually worked, wages actually due and hours involved are . . . not significant to [the conditional certification] determination."); *see also Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 219 (E.D. Mich. 2010) ("Defendant's arguments about the predominance of individualized inquiries and dissimilarities between plaintiff and [putative class members] are properly raised after the parties have conducted discovery and can present a more detailed factual record for the court to review."). Accordingly, the court declines Defendant's invitation to apply the economic realities test.[31]

In the end, despite Defendant's assertions to the contrary, the evidence presented by Plaintiffs is sufficient to make the "minimal evidentiary showing" as to the existence of a common policy, scheme or plan implemented by Defendant resulting in violations of the FLSA. *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298 (D. Md. 2007). This conclusion is in line with numerous cases in this district and throughout the country that have conditionally

---

[30] Courts considering this issue are split. *See Scovil v. FedEx Ground Package Sys., Inc.*, 811 F. Supp. 2d 516, 518-19 (D. Me. 2011) (collecting cases).

[31] The fact intensive inquiries concerning whether Plaintiffs are independent contractors or employees for purposes of the FLSA, and detailed analysis of whether Plaintiffs are sufficiently similarly situated to maintain the class are more appropriately decided after notice has been given, the deadline to opt in has passed, and discovery has closed. Once discovery has been completed, Defendant may move to decertify the collective action class on a fully developed record.

*Beasley et al. v Custom Commc'ns, Inc.*
No. 5:15-CV-583-F
Page 12

certified collective actions based on analogous circumstances.[32] That said, the court finds Plaintiffs have failed to present evidence warranting a nationwide class. Based on the pleadings and affidavits, the court finds the class includes all technicians who currently work, or have worked from February 12, 2013 to the present, out of Defendant's offices located in Maryland, Virginia, North Carolina, South Carolina and Georgia.

### B. Form of Court-Facilitated Notice

Contemporaneously with their filing of the instant motion, Plaintiffs provided the court with a proposed notice to potential class members. [DE 38-5]. Defendant did not address the sufficiency of the notice on the ground that it was premature. Def.'s Resp. at 20 n.5 [DE 48].

Courts have discretion to facilitate notice to potential plaintiffs in appropriate cases. *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 169 (1989) (applying this principle to ADEA cases). In facilitating such notice under the FLSA, courts also have "broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 574 (D. Md. 2012) (citation omitted). "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." *Id.* (citation omitted). "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial

---

[32] *See, e.g., Abdul-Rasheed v. Kablelink Communs., LLC*, No. 8:13-CV-879-T-24 MAP, 2013 U.S. Dist. LEXIS 159632 (M.D. Fla. Nov. 7, 2013) (granting conditional certification for cable installation technicians); *Taylor v. Bear Communs., LLC*, No. 4:12-CV-01261-BCW, 2013 U.S. Dist. LEXIS 90352 (W.D. Mo. June 27, 2013) (same); *Butler*, 876 F. Supp. 2d at 560 (granting conditional certification for technicians "who previously installed, upgraded, and serviced DirectTV equipment at customer locations in Maryland, Virginia, and the District of Columbia"); *Salomon v. Adderley Indus.*, 847 F. Supp. 2d 561 (S.D.N.Y. 2012) (granting conditional certification for "field technicians who install and repair cable and cable related services"); *Musarra v. Digital Dish, Inc.*, No. C2-05-545, 2008 U.S. Dist. LEXIS 110003 (S.D. Ohio Mar. 24, 2008) (granting conditional certification for technicians whose primary responsibilities consist of building, installing, repairing, and removing digital satellite equipment for DISH Network customers).

neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche*, 493 U.S. at 174. Accordingly, the court requires the filing of a joint proposed notice.

### IV. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

1. Plaintiffs' Motion to Allow Notice to be Sent to Potential Plaintiffs Informing Them of Their Right to Opt-In to this Case [DE 37], construed as a motion for conditional certification, is ALLOWED IN PART and DENIED IN PART.

2. The court conditionally certifies a collective action by the following class:

   > All individuals who were classified as independent contractors while working as Technicians out of Custom Communications, Inc.'s offices located in Maryland, Virginia, North Carolina, South Carolina and Georgia from February 12, 2013 to the present.

3. The parties shall meet and confer, through counsel, regarding the content and form of notice to be given to proposed class members and to submit a joint proposed judicial notice no later than **October 14, 2016**. The proposed judicial notice shall include a specific opt-in period not to exceed ninety days.[33]

4. Defendant shall provide Plaintiffs a list of all individuals who fall within the certified class described above no later than **October 21, 2016**. The list shall be in spreadsheet format, produced electronically and in hard copy, and contain the following information of the potential collective members: (a) full names; (b) dates of employment; (c) e-mail addresses; (d) telephone numbers and last known mailing addresses.

SO ORDERED.

This the 28th day of September, 2016.

*[signature: James C. Fox]*

JAMES C. FOX
Senior United States District Judge

---

[33] *Butler*, 876 F. Supp. 2d at 575 ("Notice periods may vary, but numerous courts around the country have authorized ninety day opt-in periods for collective actions.").