IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-583-F

ADOLPHO BEASLEY, JOHNATHAN )
CLARK, and CALVIN MCINTYRE, )
individually and on behalf of all persons )
similarly situated, )
)
                                                Plaintiffs, )
)
vs. )
)
CUSTOM COMMUNICATIONS, INC, )
)
                                                Defendant. )
_____ )

**ORDER**

Before the court is Plaintiffs' Motion to Regulate Defendant's Communications with Putative Collective Members and for Protective Order and Equitable Tolling of the Statute of Limitations pursuant to Rule 23(d) of the Federal Rules of Civil Procedure. [DE 60]. Defendant responded and Plaintiff replied. [DEs 63, 65]. Defendant filed a surreply with the court's consent. [DE 71].

## I.     BACKGROUND

Defendant is an authorized DISH Satellite Television ("DISH") retailer. Plaintiffs are current or former technicians for Defendant. Plaintiffs bring this hybrid action individually and on behalf of all others similarly situated for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq.*, and for unjust enrichment against Defendant.[1] Plaintiffs claim Defendant unlawfully misclassified them as independent contractors as opposed to employees.

---

[1]     Adolpho Beasley also brings a retaliation claim against Defendant pursuant to 29 U.S.C. § 215 (a)(3). *See* Am. Compl. ¶¶ 118-124.

Plaintiffs argue that as a result of this misclassification, Defendant deprived them of minimum wage compensation and overtime pay to which they are entitled. On September 28, 2016, the court conditionally certified Plaintiffs' FLSA claim as a collective action. *See Beasley v. Custom Communs., Inc.*, No. 5:15-CV-583-F, 2016 U.S. Dist. LEXIS 134744 (E.D.N.C. Sept. 28, 2016); [DE 66].

In the instant motion, Plaintiffs allege that subsequent to the filing of this action, Defendant's CEO, Chris Arbutina, engaged in coercive or intimidating communications regarding the lawsuit with its technicians. In support of the proposition that Defendant's prior communications with class members was improper and thereby warrants the entry of an order under Rule 23(d) prohibiting future communications, Plaintiffs rely on the declarations of Opt-in Plaintiffs Byron O'Neal, Jr. [DE 61-2], Brandon Williams [DE 65-1] and Shawn Duncan [DE 65-2][2] and an unsigned typewritten resignation letter dated March 28, 2016 by Adolpho Beasley to Steve Sheldt – a Field Service Manager ("FSM") for Defendant [DE 61-3]. The declarations include the following allegations:

(1) In January or February 2016, Sheldt's wife allegedly advised O'Neal of Defendant's intent to remove him "from the back office."[3] Soon thereafter, Sheldt advised O'Neal that he "would no longer work in the back office." O'Neal Decl. ¶¶ 4-5, 7. However, avers O'Neal, a technician who is not an opt-in plaintiff continues to work in "the back office." *Id.* ¶ 8.

(2) During an April 2016 meeting between Sheldt and Defendant's Fayetteville, North Carolina technicians, Sheldt allegedly stated that those joining this lawsuit "would have their contract with [Defendant] terminated."[4] Duncan Decl. ¶ 7.

---

[2] The declarations of Williams and Duncan were attached as exhibits to Plaintiffs' reply.

[3] O'Neal's declaration is silent as to the position to which he was moved.

[4] The court finds Plaintiffs' submission of the Duncan declaration with their reply is a belated and inappropriate attempt to bolster their position. It is evident that comments made by Defendant's CEO and President, Chris Arbutina, in June 2016 were the impetus for the instant motion. *See* infra.

  (3) During a company cookout held on Monday, June 13, 2016 for the Fayetteville technicians, Defendant's CEO and President, Chris Arbutina, allegedly advised O'Neal of his intent to "fight this case to the end" and sue the opt-in plaintiffs for attorney's fees or alternatively, "collect from their property." O'Neal Decl. ¶¶ 10, 12. Furthermore, after informing the technicians as a group that the instant lawsuit was "meritless" and advising that they "may soon receive a notice to join," Arbutina allegedly discussed upcoming contracts with Google and a phone insurance company. *Id.* ¶ 13. Arbutina also allegedly stated, "You cannot work for me and sue me. If you ever sue me or join the lawsuit, you're fired." Williams Decl. ¶ 8.

In Beasley's resignation letter, he states Defendant retaliated against him for filing the instant lawsuit by assigning him few jobs and decreasing his workload and pay.

Defendant counters claims of inappropriate communications with the declarations of Arbutina [63-1], Sheldt [DE 63-3][5] and Jeff Mauget [63-2] – Defendant's recruiting manager. Arbutina states that he "mention[ed]" the lawsuit during the June 2016 cookout, and in particular, stated it was meritless, advised Defendant did not intend on settling the case and commented that the technicians "may receive notice at some point asking whether they want to join the lawsuit." Arbutina Decl. ¶¶ 4, 11. Arbutina confirms speaking to O'Neal privately about the lawsuit, including inquiring as to O'Neal's reason for joining the lawsuit in lieu of discussing directly with Arbutina. *Id.* ¶ 6. Further, he advised O'Neal that if Defendant prevailed, "it would seek to recover any costs or expenses that it was able to recover." *Id.* ¶ 8. Arbutina disavows, however, threatening O'Neal or stating or implying that Defendant "would penalize or reward any technicians based on whether they participated in the lawsuit." *Id.* ¶¶ 9, 14; *see* O'Neal Decl. ¶¶ 14-15 (stating it "is my belief that Mr. Arbutina made these series of statements with the intent to intimidate the Technicians so that they would choose not to opt-in to this lawsuit"). Sheldt and Mauget both confirm Arbutina's attestation. Sheldt Decl. ¶ 5, Mauget Decl. ¶ 5.

---

[5] Sheldt filed a supplemental declaration in response to the declarations of Duncan and Williams. Therein, Sheldt states Defendant never employed an individual named "Brandon Williams" between November 2015 and September 2016, as claimed by Williams. Sheldt 2d Decl. ¶ 4. Defendant, however, employed a "Brandon Williamson" between November 2015 and August 2016, who attended the June 2016 company cookout. *Id.* ¶¶ 5, 7.

On June 21, 2016, Plaintiffs' counsel, Sarah R. Schalman-Bergen of Berger & Montague, P.C., emailed Defendant's counsel, Keith Coates. Therein, Ms. Schalman-Bergen confirmed a prior conversation with Mr. Coates regarding Arbutina's alleged improper comments at the cookout and Mr. Coates' position against instructing Defendant to cease "communications regarding the lawsuit with opt-in plaintiffs or potential opt-in plaintiffs." [DE 61-4 at 2]. In a June 22, 2016 email, Mr. Coates advised that while Defendant denied Plaintiffs' accusations, he nevertheless reminded Defendant of the FLSA's prohibitions against retaliation. Mr. Coates stated further that without waiving its objections to restrict its ability to lawfully communicate with the opt-in plaintiffs and technicians, Defendant:

> will agree to the following as part of a good faith effort to resolve this dispute between the parties without seeking the Court's intervention. CCI will agree to instruct its officers, directors and management employees that they should not, during the pendency of the motion for conditional certification, initiate any conversations or communications with any of the opt-in plaintiffs or other technicians regarding this case. CCI will further instruct its officers, directors and management employees that if they are asked about the lawsuit by an opt-in plaintiff or technician, they will only state that CCI denies the allegations in the lawsuit and intends to defend itself against those allegations, or words to that effect. CCI will specifically instruct these individuals not to make any threatening, coercive, false, misleading or confusing statements, or any statements regarding class counsel.

[DE 61-5 at 2]. In a July 7, 2016 email, Ms. Schalman-Bergen responded in pertinent part as follows:

> Unfortunately, this is not the first time that we have had to bring this issue to your attention, and CCI's management employees continue to have these conversations, despite your admonitions. In addition, the cat is already out of the bag, so the situation cannot be remedied by no further communications from management. As it stands, technicians have been informed that there will be consequences if they join the action. They will continue to believe this unless some further corrective communication is made. Accordingly, we have drafted the attached letter that CCI should send to all current Technicians. Please let us know if you have any edits.

[DE 61-6 at 2]. In a July 12, 2016 email, Mr. Coates confirmed his

*Beasley et al. v Custom Commc'ns, Inc.*
No. 5:15-CV-583-F
Page 5

> understanding that you [i.e., Ms. Schalman-Bergen] are now asking CCI to send out a 'corrective' letter to all of its current technicians, despite the fact that your email does not contain any new allegations or incidents of wrongdoing. Sending such a letter is not warranted under the circumstances, nor is it supported by the cases cited in your email.

[DE 61-7 at 2]. Plaintiffs' counsel did not respond until almost one month later and in that response, dated August 10, 2016, Camille Fundora of Berger & Montague, advised of Plaintiffs' decision to "proceed with court intervention" without explanation. [DE 63-4 at 4]. After Mr. Coates questioned the rationale for Plaintiffs' decision, Ms. Schalman-Bergen explained:

> CCI has engaged in a pattern of discouraging its employees from joining the lawsuit. Your proposal to tell CCI to avoid engage [sic] in further communications of the sort it has already engaged in is insufficient, and, is not a proposed compromise. You should already have advised CCI not to engage in retaliatory behavior. The message has already been sent to the technicians that they can expect not to receive further work if they join the lawsuit. Only corrective action will remedy the situation, and since you will not agree to send such a notice, we need to seek leave of Court.

[DE 63-4 at 2-3]. On August 11, 2016, Mr. Coates offered to discuss the matter further but reiterated his position that Ms. Schalman-Bergen's "demand that CCI send out a written notice to all technicians is not warranted under the circumstances, nor is it supported by the cases cited in your email." [DE 63-4 at 2]. Counsel for the parties subsequently held a teleconference, which proved unfruitful.

## II. APPLICABLE LAW

Rule 23 provides that, in the context of a class action, a court may impose conditions on the representative parties, which includes limiting communications between representative parties and potential class members. FED. R. CIV. P. 23(d); *accord Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."). Generally, in a class action, "a district court

may not order restraints on speech under [Rule] 23(d) except when justified by actual or threatened misconduct of a serious nature." *Great Rivers Co-Op. of Se. Iowa v. Farmland Indus., Inc.*, 59 F.3d 764, 766 (8th Cir. 1995). The entry of such an order must be "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co.*, 452 U.S. at 101.[6] Examples of abusive communications warranting court intervention pursuant to Rule 23(d) include "false, misleading, . . . intimidating" and coercive communications, and communications designed to undermine confidence in class counsel. Manual for Complex Litigation (Fourth) § 21.12; *accord In re School Asbestos Litig.*, 842 F.2d 671, 683 n.23 (3d Cir. 1988) (collecting cases involving Rule 23(d) communication orders).

### III. DISCUSSION

Plaintiffs argue that Defendant "engaged in a pattern of conduct designed to intimidate and coerce prospective class members from participating in this case." Pls.' Mem. at 8. As a result, Plaintiffs seek an order (1) prohibiting Defendant, its officers, directors and agents from communicating with any individuals employed as independent contractors from November 6, 2012 to the present, and (2) requiring Defendant to distribute a curative notice at its expense to all putative class members and post the notice "in an employee common area at all of [Defendant's] branches in the United States." Pls.' Mem. at 22.

Defendant responds threefold. First, Defendant argues, correctly, that reliance by Plaintiffs on alleged comments to O'Neal by Sheldt's wife cannot support their motion as such comments constitute inadmissible hearsay. FED. R. EVID. 801; *see, e.g., Solais v. Vesuvio's II*

---

[6] While *Gulf Oil* concerned the plaintiffs' communications with putative class members, courts have extended its reasoning to cover a defendant's communications with putative and current class members. *See, e.g., Randolph v. PowerComm Constr., Inc.*, 41 F. Supp. 3d 461 (D. Md. 2014).

Beasley et al. v Custom Commc'ns, Inc.
No. 5:15-CV-583-F
Page 7

*Pizza & Grill, Inc.*, Case No. 1:15-CV-227 2016 U.S. Dist. LEXIS 32087, at *10 (M.D.N.C. Mar. 14, 2016) (collecting cases). Second, Defendant argues – again correctly – that Beasley's allegations cannot support Plaintiffs' motion. Such allegations form the basis of his retaliation claim, for which no specific findings have been made. *See Gulf Oil Co.*, 452 U.S. at 101 (explaining an order limiting communications with class members must be based on findings of fact).

Third, Defendant argues that Arbutina's comments at the June 2016 cookout do not constitute the type of abusive communication warranting restriction on Defendant's communications. Defendant does not contest the veracity of the statements that O'Neal attributes to Arbutina, but rather points to a lack of proof evidencing coercive conduct on Defendant's part. The court recognizes that unilateral communications between a party and putative class members have the potential for coercion "if the class and the class opponent are involved in an ongoing business relationship," such as employer-employee. *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985); *see, e.g.*, *Camp v. Alexander*, 300 F.R.D. 617, 623 (N.D. Cal. 2014) (citing federal cases from California, Texas, and Georgia, and noting that "[o]ther courts have also noted the potential for coercion in situations where employers contact putative class member employees").

In *Kleiner*, for instance, in affirming the district court's order to limit communications with class members, the Eleventh Circuit found that the defendant had engaged in coercive litigation tactics. In particular, following class certification, the defendant entered into a large-scale telephone campaign to seek "opt-out commitments" from potential class members. *Id.* at 1198. The defendant's loan officers were urged to do the "best selling job they had ever done" when contacting potential class members and were given "score sheets" to record the number of

opt-out commitments received. *Id.* Similarly, in *Wright v. Adventures Rolling Cross Country, Inc.*, No. 12-0982 EMC, 2012 U.S. Dist. LEXIS 83505 (N.D. Cal. June 15, 2012), the court enjoined the employer from communicating with potential class members after it e-mailed members warning that if they participate in the suit, their "past transgressions will become very public" and they will be "left with tattered reputations and substantial legal bills." *Id.* at *5-6.

Here, Plaintiffs have not provided the court with admissible evidence indicating Defendant engaged in abusive communication warranting a protective order or an order directing Defendant to disseminate curative notice. The mere existence of an employer-employee relationship is not enough to justify restricting a defendant's communications. *See Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1227 (S.D. Ala. 2008) (stating "it bears emphasis that mere inherent coerciveness in the employment relationship is insufficient, in and of itself, to warrant imposition of limitations on employers' ability to speak with potential class members prior to certification"). Nor are Arbutina's statements concerning the merits of this matter sufficient. *See Agerbrink v. Model Serv. LLC*, No. 14-cv-7841 (JPO) (JCF), 2015 U.S. Dist. LEXIS 145563, at *18 (S.D.N.Y. Oct. 27, 2015) (observing "[t]here is nothing inherently improper about a defendant in an FLSA action communicating with prospective opt-in plaintiffs, including . . . express[ing] its opinions about the litigation"). In sum, the court finds Plaintiffs have not provided evidence that would lead to "a clear record and specific findings" tending to show "a likelihood of serious abuses." *Gulf Oil Co.*, 452 U.S. at 101, 104.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Regulate Defendant's Communications with Putative Collective Members and for Protective Order and Equitable Tolling of the Statute of Limitations[7] pursuant to Rule 23(d) of the Federal Rules of Civil Procedure [DE 60] is DENIED.

SO ORDERED.

This the 14th day of November, 2016.

*/s/ James C. Fox*
**JAMES C. FOX**
Senior United States District Judge

---

[7] Plaintiffs' request for tolling of the statute of limitations is moot in light of the court's order allowing conditional certification. *See* September 28, 2016 Order [DE 66].