**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**NO.: 5:15-CV-00583-FL**

| | | |
|---|---|---|
| **ADOLPHO BEASLEY, JOHNATHAN** | : | |
| **CLARK, and CALVIN MCINTYRE,** | : | |
| **individually and on behalf of all persons** | : | **COLLECTIVE ACTION PURSUANT** |
| **similarly situated,** | : | **TO 29 U.S.C. § 216(b)** |
| | : | |
| **Plaintiffs,** | : | |
| **v.** | : | |
| | : | |
| **CUSTOM COMMUNICATIONS, INC.,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION TO APPROVE**
**THE SETTLEMENT AND ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................. 1

II.  PROCEDURAL HISTORY ............................................................................................. 2

III. THE TERMS OF THE SETTLEMENT AGREEMENT ................................................. 4

   A.   Monetary Terms ...................................................................................................... 5

   B.   Notice Of The Settlement to Class Members, Calculation And Distribution of the Gross
Settlement Amount ........................................................................................................... 5

   C.   Release of Claims .................................................................................................... 7

   D.   Attorneys' Fees and Costs ....................................................................................... 8

IV.  ARGUMENT ................................................................................................................... 8

   A.   Applicable Legal Standard ...................................................................................... 8

      1.   Legal Standard for Approval of FLSA Settlements ......................................... 8

   B.   The Terms of the Proposed Settlement Are Fair and Reasonable Resolving a *Bona Fide*
Dispute .............................................................................................................................. 9

      1.   A *Bona Fide* Dispute Existed Between the Parties ...................................... 10

      2.   The Proposed Settlement is Fair and Reasonable .......................................... 11

      3.   The Allocation Formula is Fair And Reasonable ........................................... 13

   C.   The Service Award Is Justified And Should Be Approved ................................... 15

   D.   The Proposed Settlement Furthers the Purpose of the FLSA ................................ 18

   E.   The Request for Attorneys' Fees and Costs Should be Approved ........................ 19

      1.   The Fee Shifting Provision of the FLSA Provides For The Award of Attorneys' Fees
19

      2.   Time And Labor Required ............................................................................. 21

      3.   Novelty And Difficulty Of Question Presented By The Case, As Well As The Skill
Required To Perform The Legal Service Properly .............................................. 21

      4.   Customary Fee ............................................................................................... 22

      5.   Whether the fee is fixed or contingent ........................................................... 23

      6.   Any time limitations imposed by the client or circumstances ...................... 24

      7.   Amount involved and results obtained ......................................................... 25

      8.   Experience, reputation, and ability of the attorneys .................................... 25

      9.   The Undesirability Of The Case ................................................................... 26

      10.  Nature and length of the professional relationship with the client .............. 27

      11.  Awards In Similar Cases ............................................................................... 27

   F.   Lodestar Crosscheck ............................................................................................. 28

G.     Class Counsel's Costs Should Be Approved ................................................................ 29

V.   CONCLUSION ................................................................................................................... 29

**TABLE OF AUTHORITIES**

**Cases**                                                                                                                    **Page(s)**

*Amaya v. Young & Chang, Inc.*, 2014 WL 3671569 (D. Md. July 22, 2014)............................... 10

*Aros et al. v. United Rentals, Inc.*, 2012 WL 3060470 (D. Conn. July 26, 2012) ......................... 9

*Barber v. Kimbrell's*, 577 F.2d 216 (4th Cir. 1978) ..................................................................... 20

*Blum v. Stenson*, 465 U.S. 886 (1984) ......................................................................................... 20

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)......................................................................... 20

*Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211 (D. Conn. July 31, 2014)......... 18

*Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ............................ 23

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) ................................................................... 18

*Brown v. Phillips Petroleum*, 838 F.2d 451 (10th Cir. 1988)....................................................... 21

*Bryant v. United Furniture Indust., Inc.*, 2017 WL 639320 (N.D. Miss. Feb. 16, 2017)....... 22, 27

*Burton v. Utility Design, Inc.*, 2008 WL 2856983 (M.D. Fl. July 22, 2008).................................. 9

*Camp v. Progressive Corp.*, 2004 WL 2149079 (E.D. La. Sept. 23, 2004) ................................. 16

*Cardizem CD Antitrust Litig.*, 210 F.R.D. 508 (E.D. Mich. 2003)............................................... 29

*Chaverria v. New York Airport Serv., LLC*, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) .................. 13

*Chieftain Royalty Co. v. Laredo Petroleum, Inc.*, 2015 WL 2254606 (W.D. Okla. May 13, 2015)
.................................................................................................................................................... 22

*Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins.*, 1993 WL 355466 (W.D. Okla.
June 8, 1993)............................................................................................................................. 23

*Clark v. Ecolab, Inc.*, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ........................................... 23

*Craig v. Rite Aid Corp.*, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013)............................................... 17

*Creed v. Benco Dental Supply Co.*, 2013 WL 5276109 (M.D. Pa. Sept. 17, 2013) ..................... 18

*Decohen v. Abbasi, LLC*, 299 F.R.D. 469 (D. Md. Apr. 17, 2014) .................................. 17, 19, 22

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007)............................................... 16, 24

*DeWitt v. Darlington Cty., S.C.*, 2013 WL 6408371 (D.S.C. Dec. 6, 2013) ............. 14, 16, 22, 26

*Diaz v. Scores Holding Co., Inc.*, 2011 WL 6399468 (S.D.N.Y. July 11, 2011) ...................... 8, 9

*Edelen v. Am. Residential Servs.*, Inc., 2013 WL 3816986 (D. Md. July 22, 2013)......... 14, 16, 19

*Elliot v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316 (C.D. Cal. June 12, 2014) .................. 18

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991).. 23

*Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013)............................................ 11

*Evans v. Jeff D.*, 475 U.S. 717 (1986)...................................................................................... 20

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)............................................... 16

*Galvez v. Americlean Servs. Corp.*, 2012 WL 2522814 n.4 (E.D. Va. June 29, 2012) ........... 1, 12

*Garza v. Sporting Goods Properties, Inc.*, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996).............. 26

*Greenberg*, 2011 WL 7842602 (S.D.N.Y. Oct. 6, 2011)............................................................ 16

*Hall v. Higher One Machines, Inc.*, 2016 WL 5416582 (E.D.N.C. Sept. 26, 2016).. 10, 19, 20, 28

*Henry v. Little Mint, Inc.*, 2014 WL 2199427 (S.D.N.Y. May 23, 2014)................................... 27

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................................. 20

*In re Abrams*, 605 F.3d 238 (4th Cir. 2010) ........................................................................... 24

*In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................ 13

*In re Dell*, 2010 WL 2371834 (W.D. Tex. June 11, 2010)......................................................... 13

*In re Oracle Sec. Litig.*, 1994 WL 502054 (N.D. Cal. June 18, 1994) ......................................... 14

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394 (E.D. La. May 18, 1994) .......................................................................................................................................... 24

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) .................................................. 28

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3rd Cir.2005) ..................................................... 28

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 ............................................................. 22

*Johnson v. Brennan*, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)............................................ 28

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)............................ 20, 21

*Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d, 455 (S.D.W.V. 2010)............................... 17, 28

*Kidrick v. ABC Television & Appliance Rental, Inc.*, 1999 WL 1027050 (N.D.W.V. May 12, 1999) ................................................................................................................................ 14

*Lang v. DirecTV, Inc.*, 801 F. Supp. 2d 532 (E.D. La. 2011) ...................................................... 10

*Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955 (E.D. Va. Sept. 28, 2009)........... 10

*Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296 (W.D.N.C. 2013) .................................................... 10

*Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ......................................... 8, 10

*Manuel v. Wells Fargo Bank, Nat'l Assoc.*, 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ......... 17

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)............................................................. 11

*McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008).... 18

*McQuillan v. H.W. Lochner, Inc.*, 2013 WL 6184063 (M.D. Fla. Nov. 25, 2013) ........................ 1

*Monroe v. FTS USA, LLC*, 860 F.3d 389 (6th Cir. 2017) ............................................................ 11

*Oh v. AT&T Corp.*, 225 F.R.D. 142 (D.N.J. 2004)...................................................................... 29

*Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117 (D. Colo. 2016)................................ 14

*Raniere v. Citigroup, Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) ...................................................... 18

*Robinson v. Harrison Transp.*, 2016 WL 3647616 (E.D.N.C. June 30, 2016).................. 9, 11, 12

*Roeder v. Directv, Inc.*, 2017 WL 151401 (N.D. Iowa Jan. 13, 2017) ........................................ 10

*Rowles v. Chase Home Fin., LLC*, 2012 WL 80570 (D.S.C. Jan. 10, 2012) ............................... 17

*Ruiz v. GVMS, Inc.*, 2009 WL 3157349 (S.D. Tx. Sept. 25, 2009) ............................................... 9

*Saint-Preux v. Kiddies Kollege Christian Ctr., Inc.*, 2017 WL 2693484 (D. Md. June 21, 2017). 1

*Savani v. URS Prof'l Sol., LLC*, 121 F. Supp. 3d 564 (D.S.C. 2015)........................................... 17

*Schwartz v. TXU Corp.*, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)........................................ 14

*Shaw v. Interthinx, Inc.*, 2015 WL 1867861 (D. Colo. Apr. 22, 2015) ....................................... 27

*Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ........................ 14

*Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007).............. 23

*Smith v. SEMCO Servs., Inc.*, No 5:15-cv-029, 2015 WL 5021702 (W.D. Va. Aug. 24, 2015).. 12

*Soutter v. Equifax Info. Servs., LLC*, 2016 WL 7177595 (E.D. Va. Apr. 5, 2016) ...................... 17

*Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178 (D. Colo. 2012) ........................ 24

*Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003 (D. Colo. 2014) ........................................... 18

*Vaszlavik v. Storage Tech. Corp.*, 2000 WL 1268824 (D. Colo. March 9, 2000) ........................ 23

*Vela v. City of Houston*, 276 F.3d 659 (5th Cir. 2001) ........................................................... 22, 27

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir.2005) .................................. 19, 20

*Wells v. Sullivan*, 907 F.2d 367 (2d Cir. 1990) ........................................................................... 23

*Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972 (D. Colo. Nov. 13, 2013) ............ 23, 27

*Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009) ................................. 23

## **Statutes & Rules**

29 U.S.C. § 202 .......................................................................................................................... 18

29 U.S.C. § 215(a)(3) .................................................................................................................... 1

29 U.S.C. § 216(b) ................................................................................................................. 19, 29

29 U.S.C. § 255(a) ................................................................................................................. 11, 24

29 U.S.C. §§ 201 ........................................................................................................................... 1

Md. Code Ann., Lab. & Empl. § 3-503 ..................................................................................... 14

N.C. Gen. Stat. § 95-25.6 ............................................................................................................. 1

N.C.G.S. § 95–25.8 ..................................................................................................................... 14

## I.  INTRODUCTION

Plaintiffs filed this lawsuit on behalf of themselves and similarly situated technicians who were hired to perform installation and repair of Dish Network products for Defendant Custom Communications, Inc. ("Defendant" or "CCI") throughout the Southeastern United States. Plaintiffs alleges that CCI misclassified them as independent contractors and violated the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA") by failing to pay them overtime despite working more than 40 hours in a week, and further violated North Carolina law, N.C. Gen. Stat. § 95-25.6, by making unlawful deductions from the class members' compensation.  CCI denies all of Plaintiffs' claims on the grounds that its pay policies and practices are legal and valid under all relevant laws.

After considerable negotiations and a full-day, in-person mediation session in Atlanta, Georgia with experienced mediator Hunter Hughes on April 7, 2017, the Parties were able to reach a collective, non-reversionary settlement of this matter for $1,220,000.[1] See Decl. of Harold Lichten ("Lichten Decl.") (attached as Ex. 1) ¶ 9. The terms of the Parties' settlement are set forth in the Parties' Settlement Agreement (attached as Ex. 2).

Class Counsel believes that the negotiated Settlement Agreement provides an excellent

---

[1]      Plaintiff Adolpho Beasley also brought an individual claim for retaliation under the FLSA, 29 U.S.C. § 215(a)(3).  Plaintiff Beasley has reached a separate settlement of his individual claim. As discussed below, because the retaliation claim is a non-wage claim that does not relate to back pay or liquidated damages, the Court does not need to review the settlement of Plaintiff Beasley's retaliation claim.  *See Galvez v. Americlean Servs. Corp.*, 2012 WL 2522814, at *4 n.4 (E.D. Va. June 29, 2012) ("The Court need not engage in an in-depth review of the parties' settlement of [an FLSA] retaliation claim, provided its terms do not contaminate the settlement of claims relating to unpaid overtime and unpaid wages."); *McQuillan v. H.W. Lochner, Inc.*, 2013 WL 6184063, at *3 (M.D. Fla. Nov. 25, 2013) ("Settlement of FLSA retaliation claims (or of non-FLSA claims, for that matter) need not be approved by the District Court.") (citations omitted).  Rather, the circumstances of the settlement for Beasley's retaliation are outlined to establish that his separate settlement does not "contaminate" the settlement of the class claims.  *Saint-Preux v. Kiddies Kollege Christian Ctr., Inc.*, 2017 WL 2693484, at *1 (D. Md. June 21, 2017).

settlement for the 296 Class Members with respect to their claims for allegedly unpaid overtime wages arising from Defendant's alleged improper wage and hour practices at issue in this case, especially when taking into consideration the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable. Indeed, the settlement provides substantial compensation for each class members. Over 30 class members will be receiving over $4,000 and over 100 class members will be receiving shares over $3,000. See Settlement Distribution List (attached as Ex. 3). The average settlement share is expected to be approximately $2,600.[2] Moreover, since this is a non-reversionary settlement, the entire settlement fund will be distributed to the class.

Plaintiffs respectfully submit that this motion should be granted because the proposed Settlement Agreement satisfies all of the criteria for approval under federal law and falls well within the range of reasonableness.

Accordingly, Plaintiffs request that the Court issue an order: 1) granting approval of the proposed Settlement Agreement; 2) approving attorneys' fees and costs in the amount of one-third (1/3) of the Total Settlement Amount; 3) approving the distribution of service awards to the named Plaintiffs as described below; and 4) approving the plan of notice to the Class Members, including approving the Notice. Defendant does not oppose this Motion.

## II.    PROCEDURAL HISTORY

On November 8, 2015, Plaintiffs Adolpho Beasley, Johnathan Clark, Calvin McIntyre filed this class and collective action, which alleges that Defendant misclassified its Technicians as

---

[2]    Plaintiffs expect the settlement shares to rise. Pursuant to the parties' agreement, if there are more than $10,000 in settlement checks that are distributed, but are uncashed, the amount of the uncashed checks will be redistributed to the class. If the amount of uncashed checks is under $10,000, it will be distributed to the *cy pres* beneficiary, the Wake Tech Foundation, which helps pay for job training programs for North Carolina workers.

independent contractors and failed to pay Technicians any overtime compensation. (Dkt. No. 1.) On September 28, 2016, the Court issued an order granting Plaintiffs' Motion to Allow Notice to Be Sent to Potential Plaintiffs Informing Them of Their Right to Opt-In to this Case, conditionally certifying the collective action on behalf of "All individuals who were classified as independent contractors while working as Technicians out of Custom Communications, Inc.'s offices located in Maryland, Virginia, North Carolina, South Carolina, and Georgia from February 12, 2013 to the present." (Dkt. No. 66.)   On December 1, 2016, Notice of this lawsuit was sent to the conditionally certified FLSA Class Members, and a total of 296 individuals, including Plaintiffs, filed Opt-In Consent Forms to join the case.

Plaintiffs filed an Amended Complaint with a claim for retaliation on behalf of Plaintiff Beasley under the FLSA on April 20, 2016. (ECF No. 56). CCI was served with the original Complaint on November 27, 2015.   Three days later – November 30, 2015 – Plaintiff Beasley stopped receiving work assignments.  Am. Compl. ¶ 55 (ECF No. 56).  On December 14, 2015, Plaintiffs' counsel sent a letter to CCI requesting that it cease all retaliatory conduct and reinstate Plaintiff Beasley's work hours.  *See* Ex. B of Pls' Am. Compl.  After this letter was sent, Plaintiff Beasley received only two low-paying jobs.  *Id*. ¶ 58.  Between December 24, 2015 and January 7, 2016, Plaintiff Beasley received no assignments from CCI. *Id*. ¶ 59.   On January 15, 2016, Plaintiffs' counsel sent another letter to CCI, demanding it cease any retaliation against Beasley. *Id*. ¶ 63.   Immediately after CCI received Plaintiffs' January 15, 2016 letter, Plaintiff Beasley received three work assignments.  *Id*. ¶ 64.  Plaintiff Beasley did not receive a single job between March 7, 2016 and March 28, 2016 – the date Plaintiff Beasley resigned.  *Id.* ¶ 67.  CCI answered the Amended Complaint on May 4, 2016. (ECF No. 57). Moreover, CCI denied and continues to deny any liability for Beasley's termination and maintains that its conduct was legal under all

relevant laws.

In connection with the ADR process, the Parties agreed to exchange informal discovery so that they could engage in meaningful, good faith, and informed settlement discussions. Specifically, CCI produced records of the jobs performed by Class Members, including time stamps for those jobs, and data showing all the compensation received by the Class Members.

On April 7, 2017, the Parties participated in a full-day, in-person mediation session in Atlanta, Georgia before experienced mediator Hunter Hughes. Prior to mediation, Plaintiffs provided Defendant with a comprehensive damages analysis and the Parties exchanged detailed mediation statements. Although the Parties were unable to reach a settlement at the mediation, the Parties continued negotiations thereafter with the help of Mr. Hughes. As a result of the mediation session and the extensive continued arm's-length negotiations between the Parties, the Parties have agreed to settle the Action in accord with the terms of the Settlement Agreement.

The Parties now present the Settlement Agreement to the Court for its approval. Prior to mediation, CCI produced substantial amounts of data relating to the Settlement Class Members, including their dates of services and time stamps for each job they performed. The Parties have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that all members of the Collective are provided with notice of the Settlement Agreement and its terms. Furthermore, Plaintiffs' counsel will spend significant resources tracking down Settlement Class Members and sending out checks at no additional cost to the class.

III.     **THE TERMS OF THE SETTLEMENT AGREEMENT**

The Settlement Agreement provides that the Collective includes "[a]ll individuals who were classified as independent contractors and who worked out of Custom Communications, Inc.'s offices as a Technician in the United States, and who have opted in to the *Beasley, et al. v. Custom Communications, Inc.*, No. 5:15-CV-00583-F (E.D.N.C.) lawsuit as of April 7, 2017 (the

"Settlement Class Members")." The Parties have agreed that, for settlement purposes only, the Collective may be certified pursuant to the FLSA. There are approximately 296 Class Members. Each Class Member will be fully advised of this Settlement with the Notice of Settlement, which is attached to the Settlement Agreement as Exhibit A.

A.     **Monetary Terms**

The total class settlement amount $1,220,000 and will be distributed to the 296 Settlement Class Members on a non-reversionary basis.  The settlement will provide reasonable compensation to the class members for the wrongs alleged in the complaint, particularly given the litigation risks if the case were to move forward.

The settlement agreement proposes that, if approved by the Court, the class settlement fund of $1,220,000 will be distributed as follows:

1.     Incentive payments of $15,000 each to Plaintiffs Adolpho Beasley and Jonathan Clark and $10,000 to the estate of Plaintiff Calvin McIntyre, who initiated this action to benefit the entire class of technicians who worked for CCI, and who actively participated in this action.

2.     An award of attorney's fees of one-third of the gross settlement amount ($406,666), to Class Counsel, which will cover both their fees and expenses in litigating this lawsuit, as well as the costs associated with administering the settlement in-house.

3.     The remaining amount, the Net Settlement Amount, will total $773,334 to be distributed to all 296 Settlement Class Members, based on a formula that takes into account the number of weeks they worked for CCI, as well as an additional amount for technicians who worked in North Carolina and Maryland, which have state laws prohibiting certain kinds of deductions. The formula is described below.

B.     **Notice Of The Settlement to Class Members, Calculation And Distribution of the Gross Settlement Amount**

Pursuant to the Agreement, CCI will deposit a check for the Total Class Settlement of $1,220,000 with Class Counsel by November 1, 2017 or within thirty (30) days from the dismissal of this lawsuit and the conclusion of any appeal, whichever is later. No later than 14 days after CCI has deposited the Total Settlement Amount, Class Counsel will mail the Court-Approved Notice of Settlement and Settlement Awards to Class Members via First Class Mail. See Proposed Notice (attached as Ex. 4). The Notice will inform class members of the settlement, how shares are calculated, the amount of their checks, and that by depositing the check, class members will release all of their related claims against CCI.

Settlement Class Members need not submit a Claim Form as they already opted in to the lawsuit prior to April 7, 2017. Agreement ¶ 4. Awards to Class Members will be made from the Net Settlement Amount. Each Class Member shall receive a settlement award calculated using the following formula, as set forth in the Settlement Agreement. Settlement Class Members will receive a 1.0 share for each week they worked for CCI. On top of that, Settlement Class Members will receive a multiplier of 1.4 of their total weeks if they worked for CCI in North Carolina, and class members who worked in Maryland will received a multiplier of 1.3.

The Net Settlement Amount will be divided by the number of total weeks worked (including the bonus weeks) by all Settlement Class Members to establish a dollar amount per week that each claimant has been given credit for. Each claimant's share will then be calculated by multiplying the claimant's number of weeks worked (including their bonus weeks) by the weekly amount. Each Class Member's settlement share will be treated as non-wage income and/or damages or liquidated damages, which will be reported on an IRS Form 1099, and will not be subject to withholding taxes. Agreement ¶ 5.

The Settlement is non-reversionary. *Id.* at ¶ 14. Settlement Award checks shall be valid for

one-hundred eighty (180) days from the date they are issued. The Settlement Award Checks will be accompanied with the Notice stating the checks are valid for 180 days. *Id*. at ¶¶ 14-15. Class Counsel will attempt to contact Settlement Class Members whose checks are returned as undeliverable or who have not cashed their checks to obtain updated addresses. *Id*. at ¶ 14.

If, at the conclusion of the 180-day check void period, there is $10,000 or more in uncashed checks, Class Counsel will distribute the uncashed amount to the Settlement Class Members on a pro rata basis. *Id*. at ¶ 15. If there is under $10,000 in uncashed checks, Class Counsel will pay the amount of uncashed checks to the cy pres beneficiary, the Wake Tech Foundation, which is a foundation that manages donations for Wake Technical Community College in Raleigh, North Carolina, which provides job training for low-wage workers in North Carolina. See Wake Tech Foundation website at https://www.waketech.edu/wake-tech-foundation.

## C.    <u>Release of Claims</u>

Class Members who have filed opt-in forms shall release:

> CCI and all of its past, present, and future owners, parent companies, subsidiaries, managers, members, affiliates, divisions, predecessors, and successors as well as the respective, past, present, and future owners, partners, shareholders, investors, controlling persons, directors, officers, fiduciaries, trustees, accountants, employees, insurers, reinsurers, attorneys, and agents in any of those companies (collectively with CCI, the "Released Parties") for any and all claims at any time through the date of the Settlement Agreement including, without limitation, all state, local or federal claims, obligations, demands, actions, rights, causes of action, liabilities, and damages, or any other causes of action of whatever nature, whether known or unknown for alleged unpaid overtime wages, underpayment of wages, nonpayment of wages, bonuses, incentive compensation of any type, or any and all other types of compensation, liquidated or other damages (including actual, compensatory, incidental, indirect, consequential, exemplary, punitive,) unpaid costs, penalties, interest, attorneys' fees, costs, expenses, expert costs, rescission, equitable relief, reinstatement, declaratory and/or injunctive relief, restitution or other compensation and relief arising under the FLSA or any other state, local or federal law pertaining to payment of wages (collectively, the "Released Claims").

Agreement ¶ 10. In addition, and in consideration for their service awards, Plaintiffs will provide a general release to the Released Parties. *Id*. at ¶ 11.

### D. Attorneys' Fees and Costs

Pursuant to the Settlement Agreement, Class Counsel's attorneys' fees shall not exceed one-third (1/3) of the Gross Settlement Amount ($406,666), which will compensate Class Counsel for all work performed in this lawsuit and for all of the work remaining to be performed, including, but not limited to, documenting the Settlement, securing Court approval of the Settlement, ensuring that the Settlement is fairly administered and implemented, and obtaining final dismissal of the lawsuit. *Id.* at ¶ 7. Class Counsel shall receive reimbursement of their out-of-pocket costs included in their attorneys' fees. *Id.*

## IV. ARGUMENT

Plaintiffs respectfully request that the Court enter the accompanying proposed order approving the Settlement. Defendant does not oppose this Motion.

### A. Applicable Legal Standard

#### 1. Legal Standard for Approval of FLSA Settlements

A Court may approve an FLSA settlement "if [the settlement] reflects a 'fair and reasonable' compromise over a bona fide dispute." *Robinson v. Harrison Transp. Servs., Inc.*, No 5:15-cv-298-F, at *1 (E.D.N.C. June 30, 2016) (quoting *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982)). The standard for approval of an action arising under the FLSA requires only a determination the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *Lynn's Food Stores.*, 679 F.2d at 1354.

"The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement," since "[p]arties may elect to opt in to an FLSA collective, but the failure to do so does not prevent them from bringing their own suits at a later date." *Diaz v. Scores Holding Co., Inc.*, 2011 WL 6399468, *2 (S.D.N.Y. July 11, 2011). In most cases, courts do not hold hearings on

such settlements, but simply review the paperwork, and, if in order, approve the settlement. *See, e.g. Aros et al. v. United Rentals, Inc.*, 2012 WL 3060470, *2 (D. Conn. July 26, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement," and "[t]he FLSA settlement in this case meets the standard for approval" because "[t]he settlement was a result of vigorously contested litigation with substantial formal and informal discovery, motion practice, and arm's-length negotiation conducted over much of that time."); *Diaz*, 2011 WL 6399468 at *2 (S.D.N.Y. July 11, 2011) (approving settlement of opt-in plaintiffs' FLSA claims because "[t]he settlement was the result of contested litigation and arm's length negotiation."); *Ruiz v. GVMS, Inc.*, 2009 WL 3157349, *1 (S.D. Tx. Sept. 25, 2009) ("This court has reviewed the settlement agreement and finds that the amount to be paid to the plaintiffs and the amount of attorney's fees provided for in the settlement agreement are fair and reasonable."); *Burton v. Utility Design, Inc.*, 2008 WL 2856983, *2 (M.D. Fl. July 22, 2008) (adopting and confirming magistrate judge's findings and recommendation to approve the proposed settlement of individual FLSA claims for opt-in plaintiffs only).[3]

### B. The Terms of the Proposed Settlement Are Fair and Reasonable Resolving a *Bona Fide* Dispute

Here, the proposed Settlement meets the standard for approval under the FLSA. To approve the settlement agreement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement furthers the implementation of the FLSA in the workplace. *Robinson v. Harrison*

---

[3] Because the Parties agree to stipulate to a dismissal of Plaintiffs' Rule 23 North Carolina class claims without prejudice in connection with this Settlement, Rule 23 does not apply, and the Court may grant approval to the settlement via a one-step process, rather than holding a final fairness hearing. Settlement Class Members agreed to be bound by any judgment or settlement reached in this matter on their opt-in forms, thus there are no absentee class members who will be affected by this settlement.

*Transp.*, 2016 WL 3647616, at *1 (E.D.N.C. June 30, 2016).

### 1.     A *Bona Fide* Dispute Existed Between the Parties

Courts look to whether there exists a bona fide dispute under the FLSA, meaning whether there is some doubt the plaintiff would succeed on the merits at trial. *Hall v. Higher One Machines, Inc.*, 2016 WL 5416582, at *6 (E.D.N.C. Sept. 26, 2016) (citing *Lynn's Food Stores*, 679 F.2d at 1354. "A bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *16 (E.D. Va. Sept. 28, 2009). "In deciding whether a bona fide dispute exists as to a defendant's liability under the FLSA, Courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Hall*, 2016 WL 5416582 at *6 (quoting *Amaya Amaya v. Young & Chang, Inc.*, 2014 WL 3671569, at *2 (D. Md. July 22, 2014); *see also Lomascolo*, 2009 WL 3094955 at *16-17.

There are several bona fide areas of dispute in this case.  Plaintiffs allege that CCI misclassified its technicians as independent contractors under the FLSA.  Courts have reached conflicting results, however, when making the determination of whether cable installers are employees or independent contractors under the FLSA.  *See Lang v. DirecTV, Inc.*, 801 F. Supp. 2d 532, 536 (E.D. La. 2011) (collecting cases); *Roeder v. Directv, Inc.*, 2017 WL 151401, at *10 (N.D. Iowa Jan. 13, 2017) (collecting cases).  Moreover, because the determination of whether a technician is an employee requires a "fact-intensive" inquiry, prior caselaw may not be dispositive on the employee-independent contractor question.  *Roeder*, 2017 WL 151401, at *10.

Furthermore, CCI will likely move to decertify the class.  This Court has already conditionally certified a class of CCI's technicians.  ECF No. 66.  The courts in the Fourth Circuit, however, utilize a two-step approach to class certification under the FLSA. *Long v. CPI Sec. Sys., Inc.,* 292 F.R.D. 296, 298-99 (W.D.N.C. 2013).  Courts have reached different conclusions when

faced with motion to decertify classes of technicians who were misclassified as independent contractors and claim that they should have received overtime pay. *Compare Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 773 (7th Cir. 2013) (decertifying class of installers finding that damages calculations would have required individual trials) *with Monroe v. FTS USA, LLC*, 860 F.3d 389, 406 (6th Cir. 2017) (denying motion to decertify and refusing to follow *Espenscheid*).

Finally, because CCI classified its technicians as independent contractors, it did not maintain complete records of the technicians' work hours. Thus, there would likely be a dispute over the amount of the technicians' overtime damages.

Defendant also asserted that, even if Plaintiffs prevailed on liability, Plaintiffs would not be able to demonstrate that the violation was a "knowing violation," such that Plaintiffs would only be able to recover under a two-year FLSA statute of limitations. *See* 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Ultimately, the Settlement that the Parties reached reflects what Class Counsel believes to be a fair and reasonable settlement of disputed claims that takes into account the risks that Plaintiffs would face if the case proceeded in litigation.

### 2.    The Proposed Settlement is Fair and Reasonable

Because the Fourth Circuit has not definitively set out FLSA-specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the same factors used in evaluating the fairness of class action settlements under Fed. R. Civ. P. 23. *See Robinson*, 2016 WL 3647616, at *1. These factors are: 1) whether the settlement was a product of fraud or collusion; 2) the complexity, expense, and likely duration of the litigation; 3) the stage of the proceedings and the amount of discovery completed; 4) the experience of plaintiff's counsel; (5) the probability of plaintiff's success on the merits; and (6) the amount of

the settlement in relation to the potential recovery. *Robinson*, 2016 WL 3647616, at *1.

The Net Settlement Amount provides Class Members with the recovery of unpaid overtime hours worked, and it was carefully negotiated based on factual discovery, a substantial investigation by Class Counsel, and the review and analysis of documents produced by CCI in preparation for mediation. The Net Settlement Amount is based on an analysis of workweeks that the Class Members worked for Defendant during the relevant time period, as determined by CCI's personnel and payroll records. Technicians who worked in North Carolina and Maryland will receive credit for extra weeks to account for claims those technicians may have had under those states' deduction statutes.

If the Settlement is approved, all Class Members will receive a Settlement Award from the Net Settlement Amount, and Settlement Class Members will only release claims against CCI if they cash their check. If, at the conclusion of the 180-day check void period, there are $10,000 or more in uncashed checks, the uncashed amount will be distributed to the opt-ins who cashed their checks on a pro rata basis. If, at the conclusion of the 180-day void period, there is less than $10,000 in uncashed checks, Class Counsel shall issue a check for the remaining amount payable to the Wake Tech Foundation, the Parties' agreed upon *cy pres* recipient. Defendant will not receive a release from those Class Members who do not deposit and/or cash their settlement checks by the 180-day check cashing deadline.

Further, Plaintiff Beasley will settle and release his FLSA retaliation claim against Defendant pursuant to separate settlement agreement. *See Smith v. SEMCO Servs., Inc.*, No 5:15-cv-029, 2015 WL 5021702, at *2 (W.D. Va. Aug. 24, 2015) (approving FLSA settlement for overtime claims which also includes a retaliation claim); *Galvez.*, 2012 WL 2522814 at *4 (same).

Plaintiff Beasley has a bona fide claim for retaliation under the FLSA. As of November

30, 2015, three days after CCI was serviced with the complaint, on which Plaintiff Beasley was the sole named Plaintiff, CCI stopped assigning work to Plaintiff Beasley. At the same time, the evidence showed that CCI maintained the same amount of jobs. In December 2015 and January 2016, Plaintiffs sent letters to CCI complaining about retaliation, and after each letter was received, Beasley was again assigned work. CCI, however, did not assign any work to Plaintiff Beasley after March 7, 2016 even though technicians with similar ratings were being assigned work. Due to his termination, Plaintiff Beasley suffered great emotional and mental stress. The settlement for Plaintiff Beasley's retaliation claim was negotiated at arm's length based on an analysis of Plaintiff's payroll data to determine the alleged loss of income due to Plaintiff Beasley's termination and based on the emotional distress he experienced as a result of the immediate loss of income.

### 3. The Allocation Formula is Fair And Reasonable

The proposed allocation formula is fair and reasonable and should be approved. *See In re Dell*, 2010 WL 2371834, at *10 (W.D. Tex. June 11, 2010) ("The allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' Class Counsel.") (quoting *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429–30 (S.D.N.Y. 2001) (citations omitted)); *see also Chaverria v. New York Airport Serv., LLC*, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.") (citations omitted). Under the proposed allocation formula, each Eligible Class Member will receive settlement shares for each workweek where the Settlement Class Member worked between three years prior to the date the Class Member's Opt-In Consent Form was deemed filed and April 7, 2017. Settlement Class Members who performed work in Maryland shall receive settlement shares which equal 1.3 times

the total number of workweeks s/he performed work for CCI as a Technician in Maryland between April 7, 2014 and April 7, 2017.[4]  Settlement Class Members who performed work in North Carolina shall receive settlement shares which equal 1.4 times the total number of workweeks s/he performed work for CCI as a Technician in North Carolina between November 16, 2013 and April 7, 2017.[5]  "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994); *Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358, at *12 (S.D. Tex. Jan. 23, 2015); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005).  This formula is similar to those found to be fair and reasonable in similar cases, and warrants approval. *See, e.g., DeWitt v. Darlington Cty., S.C.*, 2013 WL 6408371, at *6 (D.S.C. Dec. 6, 2013) (approving a *pro rata* allocation of the settlement based on the number of shifts worked); *Kidrick v. ABC Television & Appliance Rental, Inc.*, 1999 WL 1027050, at * 3 (N.D.W.V. May 12, 1999) (approving distribution of the settlement fund based on the number of workweeks each class member worked).

When, in comparison to the proposed Settlement, proceeding with litigation would require a substantial amount of time to yield a benefit to the Class Members, it is an indication that the proposed settlement is fair, reasonable, and adequate. *See Edelen v. Am. Residential Servs. Inc.*, 2013 WL 3816986, at *9 (D. Md. July 22, 2013) ("[t]he existence of [ ] disputed legal and factual issues creates uncertainty and risk for all parties moving forward"); *see also Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 130-131 (D. Colo. 2016) ("[G]iven the inherent risks associated with further litigation, the Class Members may recover less should the case proceed

---

[4]     Technicians who worked for CCI in Maryland may have claims for unlawful deductions under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-503.
[5]     Technicians who worked for CCI in North Carolina may have claims for unlawful deductions from their wages under the North Carolina Wage and Hour Act, N.C.G.S. § 95–25.8.

through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation.")  In the instant case, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

The Settlement was the result of contested litigation, factual discovery, and arm's-length negotiations. The proposed Settlement was only reached after the Parties exchanged substantial informal discovery and conducted a full-day, in-person mediation session in Atlanta, Georgia, preceded by extensive arm's-length negotiations between counsel for the Parties.  As described above, Class Counsel extensively investigated the applicable law, the relevant facts discovered in this action, and the potential defenses thereto. The settlement amount is based on an intensive review of the facts and law.

Class Counsel are experienced and respected class action litigators. *See* Lichten Decl. ¶¶ 2-4; Decl. of Sarah Schalman-Bergen ("Schalman-Bergen Decl.") at ¶¶ 2-3, 16 (attached as Ex. 5); Decl. of David Rothstein ("Rothstein Decl.") ¶¶ 9-12 (attached as Ex. 6).  Based on Class Counsel's knowledge and expertise in this area of law, Class Counsel believes this Settlement will provide a substantial benefit to the Settlement Class.  In summary, the proposed Settlement Agreement is the product of careful factual and legal research and arm's-length negotiations between the Parties.

### C.    The Service Award Is Justified And Should Be Approved

Pursuant to the Settlement Agreement, Defendant has agreed to pay service awards of $15,000.00 each to Plaintiffs Beasley and Clark and $10,000 to the estate of Plaintiff McIntyre.

Plaintiffs Adolpho Beasley, Johnathan Clark, and Calvin McIntyre (estate of) will receive a service award in the amount set forth in the settlement agreement for their efforts in bringing and prosecuting this matter and, in addition, for their broader releases against Defendant. Subject to

Court approval, this amount will be paid to Plaintiffs in addition to their recovery of unpaid overtime for the time when they worked for Defendant. Defendant has agreed to pay Plaintiff Beasley an additional amount for his claim of retaliation.

Service awards have been routinely awarded in FLSA collective actions. *Edelen*, 2013 WL 3816986, at *16. Service awards are common as "[s]uch payments compensate Plaintiffs for their additional efforts, risks, and hardships they have undertaken as class representatives on behalf of a group in filing and prosecuting the action." *DeWitt,* 2013 WL 6408371 at *14; *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 339–40 (W.D. Tex. 2007) (quoting *Camp v. Progressive Corp.*, 2004 WL 2149079, at *8 (E.D. La. Sept. 23, 2004) ("Federal courts consistently approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during litigation.") (internal quotation omitted). "Service awards or incentive payments are especially appropriate in employment litigation, where 'the plaintiff is often a former or current employee of defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class [as] a whole, undertaken the risk of adverse actions by the employer or coworkers.'" *DeWitt*, 2013 WL 6408371 at *14 (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)).

Here, the proposed additional payment is justified by the benefits that Plaintiffs have brought to the Class Members. Plaintiffs took significant risks in coming forward to represent the interests of their fellow employees, including risking their reputation in the community and in their field of employment, in order to participate in this case on behalf of the Collective. *See* Schalman-Bergen Decl. ¶¶ 11-12. Indeed, Plaintiff Beasley alleges that he was terminated by Defendant for bringing this lawsuit.[6] *See Sand v. Greenberg*, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011)

---

[6]     As part of the settlement, Beasley will also release his individual retaliation claim.

(approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); *Craig v. Rite Aid Corp.*, 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013), *appeal dismissed* (3d Cir. Feb. 20, 2013) ("[N]amed plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation.").

Furthermore, Plaintiffs worked with Class Counsel, providing background information about their employment, about CCI's policies and practices, and about the allegations in this lawsuit. Schalman-Bergen Decl. ¶¶ 10-12. Further, Plaintiffs actively supported the litigation of their claims on behalf of the class and worked with counsel to produce declarations in support of conditional certification. *See* Decl. of Adolpho Beasley (Dkt. No. 31-1); Decl. of Calvin McIntyre at (Dkt. No. 38-2); Decl. of Johnathan Clark at (Dkt. No. 38-3). Moreover, both Plaintiffs Beasley and Clark worked with counsel to prepare for the mediation, and Plaintiff Clark traveled to Atlanta and attended the full-day mediation. *See* Schalman-Bergen Decl. ¶ 11. In addition, the named Plaintiffs are providing a broader release of claims to CCI.

The additional payment requested in this case is in line with those approved in collective and class actions in the Fourth Circuit. *See, e.g.*, *Savani v. URS Prof'l Sol., LLC*, 121 F. Supp. 3d 564 (D.S.C. 2015) ($15,000 service award); *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d, 455, 468 (S.D.W.V. 2010) ($15,000 incentive award to each of the six class representatives for initiating the suit and providing and analyzing records during discovery). [7]

---

[7]     *See also Souter v. Equifax Info. Servs., LLC*, 2016 WL 7177595, at *3 (E.D. Va. Apr. 5, 2016) ($20,000 service award to one plaintiff and $2,500 each to the other two plaintiffs); *Manuel v. Wells Fargo Bank, Nat'l Assoc.*, 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016) ($10,000 service award to plaintiff); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 485 (D. Md. Apr. 17, 2014) (same); *Rowles v. Chase Home Fin., LLC*, 2012 WL 80570, at *4 (D.S.C. Jan. 10, 2012) ($25,000 service award to one plaintiff and $10,000 to another). Similar or larger service awards for wage and hour collective and class actions in other district courts have been approved. *See Fenley v.*

For these reasons, the service award payments of $15,000.00 each to Plaintiffs Beasley and Clark and $10,000 to the estate of Plaintiff McIntyre, should be approved as fair and reasonable.

### D.     The Proposed Settlement Furthers the Purpose of the FLSA

Finally, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace.  Indeed, the settlement furthers the purposes of the FLSA by providing Class Members with substantial recovery for their unpaid overtime, that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Importantly, all Settlement Class Members will receive a Settlement Award, and will not release any claims against CCI unless they cash their check. Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be

---

*Applied Consultants, Inc.*, No. 2:15-CV-00259-MRH (W.D. Pa. June 17, 2016) (Dkt. No. 65) ($10,000 service award to named plaintiff); *Niver v. Specialty Oilfield Services*, No. 2:14-cv-01599-JFC (W.D. Pa. Oct. 7, 2016) (Dkt. No. 89) (granting $10,000 service award to one named plaintiff and $5,000 to the other two named plaintiffs); *Ciamillo v. Baker Hughes*, No. 3:14-cv-00081-RRB (D. Alaska June 9, 2015) (Dkt. No. 71) (approving $10,000 service award to each named plaintiff); *Elliot v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316 at *11 (C.D. Cal. June 12, 2014) ($10,000 service award to named plaintiff); *Raniere v. Citigroup, Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (granting service awards of $20,000, $15,000 and $7,500 to named plaintiffs); *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1010 (D. Colo. 2014) (approving service award of $15,000 to the named plaintiff); *Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at *4 (D. Conn. July 31, 2014) ($10,000 service award to named plaintiff); *Creed v. Benco Dental Supply Co.*, 2013 WL 5276109, at *7 (M.D. Pa. Sept. 17, 2013) (approving service award of $15,000 to named plaintiff as he "took [ ] risks for what would only be at most a couple thousand dollar recovery if he were to be treated the same as all the unnamed class members."); *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *16 (W.D. Okla. Oct. 27, 2008) (approving service award of $15,000 to the named plaintiff).

approved as reasonable. *See* Settlement Agreement.

Moreover, Class Members will receive the proposed Notice, which is attached to the Settlement Agreement as Exhibit A, which is clear and straightforward, and provides information on the meaning and nature of the terms and provisions of the Settlement Agreement, the monetary awards that the Settlement will provide to Class Members, including the allocation method, the scope of the release, the request for attorneys' fees and costs, the deadline for cashing the settlement award, and their rights should they not cash the settlement checks.

Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a notice disseminated under authority of the Court, and should be approved.

### E.    The Request for Attorneys' Fees and Costs Should be Approved

#### 1.    The Fee Shifting Provision of the FLSA Provides For The Award of Attorneys' Fees

A Plaintiff in a FLSA case may recover his/her attorneys' fees and expenses under the statute's fee-shifting provision. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Edelen*, 2013 WL 3816986 at *12 (award of attorney's fees under Section 216(b) of the FLSA is mandatory).

In common fund cases, district courts in the Fourth Circuit have examined a motion for attorneys' fees under one of two methods – lodestar or percentage method. *Hall*, 2016 WL 2016 WL 5416582 at *7 (citing *Decohen*, 299 F.R.D. at 480-81). While the Fourth Circuit has not expressly adopted the percentage method over the lodestar method for common fund lawsuits, the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir.2005). This potentially contrasts with the lodestar

method, which may "create [ ] an unanticipated disincentive to early settlements, tempt[ ] lawyers to run up their hours, and compel[ ] district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.*

The percentage method is reviewed under the framework set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's*, 577 F.2d 216, 226 (4th Cir. 1978), to determine whether the fee is reasonable. Under the common fund doctrine, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Hall*, 2016 WL 2016 WL 5416582 at *7. Parties to a class [or collective] action may negotiate not only the settlement of the action itself, but also payment of attorneys' fees. *See Evans v. Jeff D.*, 475 U.S. 717, 734-35, 738 n. 30 (1986). A negotiated fee is preferred because it prevents attorneys' fees from becoming "a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). Courts therefore have "a responsibility to encourage agreement" on fees where possible. *Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984). Here, as part of the negotiations that led to the Settlement, Defendant agreed not to object to an award of one-third (1/3) of the Gross Settlement Amount for attorneys' fees and costs.

In determining what constitutes a reasonable percentage fee award, a district court considers the following factors: (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8)

amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d 717-19. The weight given to each of the *Johnson* factors varies from case to case, and "rarely are all of the *Johnson* factors applicable." *See, e.g. Brown v. Phillips Petroleum*, 838 F.2d 451, 456 (10th Cir. 1988).

These factors support approval of the requested fee and are discussed below.

### 2. Time And Labor Required

The amount of time and labor devoted to this case by Class Counsel was substantial. Prosecuting this matter to a successful settlement for the benefit of the Class Members required Class Counsel to expend a significant amount of time by attorneys, including substantial legal and factual research, an in-person negotiation, and numerous subsequent settlement negotiations. Additionally, Class Counsel will play a significant role in the settlement administration process. The time and labor expended support the requested fee.

### 3. Novelty And Difficulty Of Question Presented By The Case, As Well As The Skill Required To Perform The Legal Service Properly

Certifying any class to afford nationwide relief is a significant undertaking in terms of sophistication and risk. In this case, Plaintiffs and Defendant agree that there are numerous disputed issues of fact and law, including, specifically, whether Plaintiffs and the Class Members were misclassified as independent contractors and entitled to overtime compensation. Defendant would contest the number of overtime hours worked. Defendant asserted that maintaining certification would be difficult. Because Defendant had potentially strong legal and factual defenses to Plaintiffs' claims, even if Plaintiffs were able to obtain maintain certification in the action, an outcome of zero recovery for the Plaintiffs and for the Class Members remained possible. Class Counsel accepted these risks, diligently prosecuted the case, and negotiated a

meaningful and substantial recovery. Accordingly, this factor also supports Class Counsel's fee request.

Both trial and judicial review are unpredictable and could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself. Indeed, as the U.S. District Court for the Southern District of New York observed:

> Even a victory at trial is not a guarantee of ultimate success. If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such a judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747-48, *aff'd*, 798 F.2d 35 (2d Cir. 1986).

The wage and hour issues in this litigation are governed by the highly technical federal FLSA law and regulations. Class Counsel focus their practices in this highly technical area and have litigated numerous cases under these wage and hour laws on both an individual and class/collective action basis. *See generally* Lichten Decl. ¶¶ 2-5; Schalman-Bergen Decl. ¶¶ 2-4, Ex. A; Rothstein Decl. ¶¶ 11-12. Class Counsel thus had the requisite skill to perform the legal services required in this complex litigation.

### 4. Customary Fee

A one-third attorneys' fee is reasonable in actions of this nature. In fact, courts from across the country have awarded a one-third fee in other class and collective actions. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (noting fee awards generally ranging from 35% to 40% are common in cases taken on a contingent fee basis); *Decohen*, 299 F.R.D. at 482-483 (Awarding one-third of $3,050,000 settlement fund, which amounted to a 3.9 multiplier); *DeWitt*, 2013 WL 6408371, at *9 (finding one-third fee is customary in class litigation).[8] Fees within this

---

[8] *See also Bryant v. United Furniture Indust., Inc.*, 2017 WL 639320, at *4 (N.D. Miss. Feb. 16, 2017) ("awards commonly fall between a lower end of 20% and an upper end of 50%"); *Chieftain*

range are "presumptively reasonable." *Vaszlavik v. Storage Tech. Corp.*, 2000 WL 1268824, *4 (D. Colo. March 9, 2000).

Here, Class Counsel seeks one-third (1/3) of the Gross Settlement Amount as fees. As described above, this is well within the percentage range approved in similar cases. Further, the requested one-third of the Gross Settlement Fund includes costs. *See also Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, *6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."). Thus, the customary fee factor supports the requested fee award.

### 5. Whether the fee is fixed or contingent

Class Counsel agreed to represent Named Plaintiffs on a contingency fee basis. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir.

---

*Royalty Co. v. Laredo Petroleum, Inc.*, 2015 WL 2254606, at *3 (W.D. Okla. May 13, 2015) ("An award of forty percent (40%) of the settlement value is well within the range of acceptable fee awards in common fund cases."); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011) (Analyzing cases from district courts throughout the country in common fund cases where attorneys' fee awards "generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund," and noting that most of the cases awarded attorneys' fees at the level of 33.3% of the common fund.); *Clark v. Ecolab, Inc.*, 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (Approving attorneys' fees of $2 million from the $6 million common fund in a FLSA collective action and noting that attorneys' fee percentages of one-third are "reasonable and consistent with the norms of class litigation in [the Second] circuit."); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) (Approving attorneys' fees of 33 1/3% of total settlement fund of $6.7 million, plus $150,000 in costs, in FLSA collective action on behalf of class approximately 11,400 convenience store employees); *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at * 2 (M.D.N.C. Jan. 10, 2007) (Noting, "in this jurisdiction, contingent fees of one-third (33.3%) are common."); *Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins.*, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249–50 (S.D. Ohio 1991) ("The percentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created.").

1990).  Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case." *In re Abrams*, 605 F.3d 238, 245-46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk." *Id.*

In this case, Class Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial.  This factor thus weighs in favor of the requested fees because Class Counsel assumed significant risk of nonpayment when they agreed to represent Named Plaintiffs on a contingency fee basis. *See DeHoyos*, 240 F.R.D. at 330 (quoting *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394, at *6 (E.D. La. May 18, 1994) ("Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.")  By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them.  The risks Class Counsel undertook were real, and the resources that Class Counsel dedicated to this action meant that such resources were not available to other cases.  Class Counsel's contingency risk, together with the excellent result that has been achieved on behalf of the Class Members, supports the requested fees and costs.

### 6.      Any time limitations imposed by the client or circumstances

The FLSA provides a maximum three-year statute of limitations on claims. *See* 29 U.S.C. § 255(a).  The statute of limitations for the FLSA claims of potential opt-in plaintiffs is not tolled by the filing of Plaintiff's complaint, but rather by the opt-in plaintiff filing his/her written consent with the court. *See Stransky v. HealthONE of Denver, Inc.,* 868 F. Supp. 2d 1178, 1181-82 (D. Colo. 2012).  In this case, Class Counsel filed Plaintiffs' Complaint on November 8, 2015, thereby ceasing the running of Plaintiffs' statute of limitations, but not of the Class Members.  The Court

granted conditional certification September 28, 2016, approximately 14 months after Plaintiffs filed their Complaint. Even though the Complaint was filed, Opt-In Plaintiffs' statute of limitations of their FLSA claims continued to run until they filed their opt-in consent forms with the Court.

### 7. Amount involved and results obtained

Here, the Gross Settlement Amount represents a significant recovery on behalf the Settlement Collective in light of some risks. For instance, Defendant was prepared to argue that the technicians were independent contractors and thus, were not covered by the FLSA and were owed no damages. Moreover, Defendant would have also disputed the number of hours worked by the technicians.

Furthermore, the Gross Settlement Amount is a negotiated amount that falls between Defendant's calculated potential exposure and Plaintiffs' calculated potential damages. As determined by Defendant's personnel and payroll records, the Gross Settlement Amount is based on an examination of each Class Members' workweeks when they worked for Defendant during the relevant time period. Settlement Class Members will receive an average of $2,600, while over 30 technicians will receive over $4,000. *See* Settlement Distribution List.

In sum, the Gross Settlement Amount represents an excellent result given the circumstances of the case and, thus, the "amount involved and results obtained" factor supports the proposed fee award.

### 8. Experience, reputation, and ability of the attorneys

As is described in detail in Class Counsel's declarations, Class Counsel focus their practices on and have extensive experience in representing workers in wage and hour litigation nationwide, including class and collective action cases. Counsel have shown their ability by achieving the excellent result obtained for the Settlement Collective in this case. The experience,

reputation, and ability of Class Counsel, therefore, supports the requested fee award.

### 9. The Undesirability Of The Case

Class Counsel undertook significant risk in agreeing to represent Named Plaintiffs in this case. The risk assumed by Class Counsel is similar to that recognized by district courts in the Fourth Circuit. In *Dewitt*, the Court noted:

> In the Court's experience, employment cases do not appear to be eagerly sought out by the majority of the plaintiffs' bar in South Carolina, because of the difficulty of the cases and the complexity of the issues usually involved. In situations like this case, where each individual's economic damages may be relatively modest and where the employee victims usually do not have the resources to pay substantial attorney's fees and costs in advance, obtaining counsel would be extremely difficult were it not for the statutory provisions for attorney's fees and costs for prevailing parties. Therefore, public policy favors adequate awards of attorney's fees in cases under the FLSA to encourage aggrieved plaintiffs to bring these actions and to provide incentives for plaintiffs' counsel to take such cases. The court has not been made aware of any public policy concerns raised by Plaintiffs' attorney fee request.

2013 WL 6408371 at *10; *see also Garza v. Sporting Goods Properties, Inc.*, 1996 WL 56247, at *33 (W.D. Tex. Feb. 6, 1996) ("Factors [ ] such as the financial burden on counsel and the demands of handling a class action of the size and complexity as set forth, may cause a case to be considered 'undesirable.'") (internal citations omitted).

Large scale wage and hour cases are complicated and time-consuming matters. Any attorney undertaking these types of cases must be prepared to make tremendous investments of time, energy, and financial resources in order to appropriately pursue them, as evidenced by this case. In preparing for mediation, Class Counsel reviewed Defendant's payroll and personnel documents and, based on the data provided, generated a damages analysis consisting of various models representing different assumptions. Class Counsel then worked with Defendant's Counsel to answer any questions either party may have on the data and damages analysis provided. More generally, Class Counsel possesses particularized skill, experience, and ability to litigate these types of claims.

**10.     Nature and length of the professional relationship with the client**

The economics of representing employees in wage and hour matters is different than defense firms which have a steady book of corporate clientele.  Typically, defense firms' clients require continuous legal services from their counsel.  Comparatively, it is unlikely that many Class Members will be seeking additional representation from Class Counsel after the conclusion of a lawsuit.  The wage claims asserted in this case do not lend themselves to continuous, long-term attorney-client relationships. This factor thus weighs in favor of the requested fee award.

**11.     Awards In Similar Cases**

Finally, the requested fee award is in line with awards made in similar actions. The Fifth Circuit has noted that fee awards generally range from 35% to 40% are common in cases taken on a contingent fee basis. *See Vela*, 276 F.3d at 681.  Here, Class Counsel's request for one-third of the Gross Settlement Fund is consistent with the norms of wage and hour class and collective litigation in this Circuit and across the country. Courts around the country have "routinely awarded one-third or more of the settlement fund as attorneys' fees in wage and hour cases."  *See Henry v. Little Mint, Inc.*, 2014 WL 2199427, *15 (S.D.N.Y. May 23, 2014) (noting that request for fees was "in line with decisions from across the country that have awarded one-third or more in wage-and-hour settlements" and citing cases).  Class Counsel's request for one-third of the Gross Settlement Fund falls well within the range of reasonable allocations in the context of awards granted in wage and hour cases. *See, e.g., Bryant*, 2017 WL 639320 at *4 (granting attorneys' fees award of 40% of the common fund); *Fenley*, No. 2:15-cv-00259 (Dkt. No. 65) (approving fee award in 1/3 of the claimed portion of the Gross Settlement Fund); *Black v. Wise Intervention Servs., Inc.*, No. 2:15-cv-00453-MPK (W.D. Pa. Mar. 16, 2016) (Dkt. No. 46) (approving fee award of 33.33% of the total settlement amount to Class Counsel in wage and hour settlement); *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015) (same); *Whittington*,

2013 WL 6022972 at *6 (approving a request for fees and costs in an FLSA class action settlement where combined the fees and costs amounted to approximately 39% of the settlement fund).

Accordingly, the fees approved in similar cases further support the requested fee here.

F.    **Lodestar Crosscheck**

Some district courts in the Fourth Circuit also employ a lodestar cross check to double check the reasonableness of a fee requested under the percentage-of-a-common-fund. *See Hall*, 2016 WL 5416582 at *7. When the lodestar method has been utilized, "[c]ourts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Kay*, 749 F. Supp. 2d at 470. The *Kay* court approved a requested fee amount that produced a lodestar multiplier between 3.4 to 4.3 times the lodestar amount. *Id.*

Class Counsel have logged approximately 850 hours litigating this case.  Lichten Decl. ¶ 7; Schalman-Bergen Decl. ¶ 14; Rothstein Decl. ¶ 14.  Based on reasonable hourly rates, Plaintiffs estimate that they have generated approximately $365,000 in attorneys' fees.  Id.

Under a lodestar cross check, a one-third fee request in this case amounts to a multiplier of approximately 1.11.  "Courts routinely award counsel two to three times lodestar in class action settlements."  *Johnson v. Brennan*, 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16, 2011) (collecting cases); *Badia v. Homedeliverylink*, No. 12-6920, ECF No. 99 (granting one-third award of attorney's fees with multiplier of 1.59); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (finding multiplier of 2.02 is "appropriate"); *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 298–99, 303–04 (3rd Cir.2005) (finding no abuse of discretion where district court approved attorney's fees with a "fairly common" lodestar multiplier of 4.07, despite objection that lodestar multiplier could not be above 3).  The result obtained and the work that was required by Class Counsel to obtain this Settlement, as described throughout this brief, justify the relatively small multiplier of 1.11.

### G.     Class Counsel's Costs Should Be Approved

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b). Here, Class Counsel's costs are included in the one-third (1/3) of the Total Settlement Amount requested for attorneys' fees.

Class Counsel's costs include reasonable out-of-pocket expenditures. "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 210 F.R.D. 508, 535 (E.D. Mich. 2003). *See also Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding expenses such as "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express service, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work, (10) postage, (11) the cost of hiring a mediator, and (12) NJ Client Protection Fund *pro hac vice*." to be reasonable).

The expenses incurred in this litigation to date are described in the accompanying declarations total $23,275. *See* Lichten Decl. ¶ 8; Schalman-Bergen Decl. ¶ 27; Rothstein Decl. ¶ 15. The expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as mediation fees, court costs, copying fees, delivery costs (including costs for printing and sending Claim Forms to Class Members), and computerized legal research. All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement, Defendant does not object to the request for costs.

## V.     CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order:

(1) approving the settlement as a fair, adequate, and reasonable; (2) approving the service awards of $15,000.00 each to Plaintiffs Adolpho Beasley and Johnathan Clark and $10,000.00 to the Estate of Calvin McIntyre; (3) incorporating the terms of the Settlement Agreement; (4) approving Class Counsel's fees and costs; and (5) dismissing this claims of the Settlement Class Members with prejudice against Defendant. *See* Proposed Order (attached as Ex. 7).

Dated: August 11, 2017

Respectfully submitted,

BERGER & MONTAGUE, P.C.

/s/ Sarah R. Schalman-Bergen
Shanon J. Carson
Sarah R. Schalman-Bergen
Alexandra K. Piazza
Camille Fundora
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
cfundora@bm.net

Harold Lichten
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
hlichten@llrlaw.com
bweber@llrlaw.com

David E. Rothstein
ROTHSTEIN LAW FIRM, PA
1312 Augusta Street
Greenville, SC 29605
Telephone: (864) 438-0969
Facsimile: (864) 324-2497
derothstein@mindspring.com

*Attorneys for Plaintiffs and the Class*

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that Plaintiffs conferred with counsel for Defendant by electronic mail concerning this motion and on August 11, 2017, counsel for Defendant assented to the relief sought herein.

s/ Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed on the ECF docket and is available for viewing and download on this 11th day of August, 2017.

s/ Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen